PAYNTER *v.* LITTLEFIELD.

Opinion delivered February 4, 1918.

RESCISSION OF DEEDS—FRAUD—DELAY.—The right of rescission of a deed after an exchange of lands, on the grounds of fraud, will not be lost, where the party seeking relief is entitled thereto, and under the circumstances of the case has acted with reasonable diligence.

Appeal from Scott Chancery Court; *Wm. A. Falconer,* Chancellor; affirmed.

*A. G. Leming* and *Hon & Woods,* for appellant.

1. The decree should be reversed on the evidence alone. The parties dealt at arm's length with each other. The deal was made after due investigation and full knowledge of all the facts. There was no fraud nor false representations made by appellant. No offer to rescind was made nor effort to put appellant *in statu quo.* 24 A. & E. Enc. L., 625; 6 Cyc. 312-314.

If Littlefield ever had the right to rescind he forfeited it and is estopped. 1 Paige on Cont. 222. On discovery of fraud rescission must be offered at once. 192 U. S. 232.

2. Littlefield is estopped by his acts. Story Eq. Jur. (12 Ed.), § 1546; 2 Parsons on Cont. (7 Ed.), 935; Ann. Cases 1912 C. 407, 412. The offer to rescind must be prompt. 9 Cyc. 436, Pomeroy on Specific Performance, § 222; Ann. Cases 1913, C. 383; Ann. Cases 1917, A. 483; see also 6 Am. St. 899; 14 *Id.* 716; 99 *Id.* 413; 134 *Id.* 417; 131 *Id.* 346; 245 Ill. 14; 137 Am. St. 301; 189 S. W. 57; 196 *Id.* 236; 116 Ark. 443; 194 S. W. 234; 192 *Id.* 231; 33 Ark. 468; 80 *Id.* 543; 89 *Id.* 349; 95 *Id.* 449; 97 *Id.* 589; 117 *Id.* 93; 115 *Id.* 89; 188 S. W. 571; 125 Ark. 572; 128 Ark. 353; 125 Ark. 146.

3. Littlefield can not retain possession and avoid payment. 27 Ark. 162; 31 *Id.* 151. He was not evicted. There was no fraud, but if so, he must offer to rescind. 40 Ark. 420. After deeds are executed, a court of equity will not rescind the contract for misrepresentation as to encumbrances, but leave the party to his remedy at law. 22 Ark. 198. If rescission for fraud is sought, on

discovery of the fraud, the purpose must be announced at once and adhered to. 46 Ark. 337.

4. Representations as to value are mere expressions of opinion, puffing, on which a purchaser relies at his own risk, and are no ground for action for false representations or rescission. 82 Ark. 20; 112 *Id.* 489. A statement of intention of doing certain things in the future, although made with intent to deceive, will not, even if relied on, form the basis of an action for fraud and deceit. 121 Ark. 23; 124 *Id.* 308. Sickness or feeble health is no ground for rescission. 23 Ark. 175.

*Bates & Duncan* and *Carmichael, Brooks & Rector,* for appellees.

1. The evidence sustains the decree of the court. The representations were false and fraudulent and were relied on by appellees. The relation of the parties was confidential. 129 Ark. 498.

2. The representations of appellant constitute fraud. 129 Ark. 498; 128 Ark. 353. They were relied on and wrought injury. 71 Ark. 91; 112 *Id.* 489; 47 *Id.* 148; 118 N. W. 423; 125 U. S. 247; 97 Fed. 854; 55 Ark. 299; 46 N. W. 540; 107 Ill. 302.

3. The doctrine of estoppel can not be invoked by appellant. 129 Ark. 498.

SMITH, J. The nature of this suit appears from the findings of fact made by the court below, from which we take the following recitals. On and previous to August 23, 1915, C. G. Littlefield and V. V. Littlefield, his wife, were the owners of a farm of 280 acres in Cloud County Kansas, of which 200 acres were in cultivation, and the balance in pasture, and the land was highly improved. It was at that time, however, encumbered with a first mortgage for $5,000.00, and a second mortgage for $3,600.00, which embraced also a number of head of live stock and the farm implements on the place. About this time Littlefield was advised by his physician, on account of his

health, to seek a milder climate, and he accordingly listed the farm for sale with one Houser, a real estate agent at Concordia, Kansas. At this time A. J. Paynter, who was an experienced land trader, owned a tract of land in Scott County, Arkansas, containing 644 acres. These were "cut-over" lands, and almost wholly unfit for cultivation, and possessed but little value, or no marketable value when denuded of their merchantable timber. Paynter had owned these lands for some time and was familiar with their character, location and value. On the date first mentioned above a suit was pending against Paynter in which damages were claimed in the sum of $1,270, and these lands had been attached and a *lis pendens* notice had been filed in said suit, of all of which facts Paynter was, at the time, fully advised. About this time Paynter drove to the home of Littlefield, a distance of nine miles from the nearest railroad, and, upon learning that Littlefield was a member of the Independent Order of Odd Fellows, introduced himself as a member of said Order, and represented to Littlefield that he owned four quarter-sections of land in Scott County, Arkansas, covered with virgin pine timber, which had been cruised by an expert timber estimator and was estimated to have from 2½ to 3 million feet of merchantable pine timber thereon, which he would sell, and had contracted to sell, within sixty days, at $2.50 per thousand feet; that there was a good house on the land, and fine springs of water, and about 40 acres in cultivation on each quarter section; and that the land was worth at least $20.00 cash per acre, and was situated within nine miles of Waldron, the county seat. Neither Littlefield nor his wife had ever been in Scott County, Arkansas, and knew nothing whatever about the land, or its value, and they relied wholly on the warranties and representations of Paynter, which were, in fact, wilfully and knowingly false and were made with the intention to defraud and, by reason thereof, the Littlefields were induced, on said date, to enter into a written contract with Paynter for the exchange of lands. By the terms of this contract, and as a part of the con-

sideration therefor, Paynter guaranteed that the Arkansas lands would easily carry a loan of $4,000 without the merchantable timber thereon, and Paynter agreed to procure a loan of that amount, due five years after date, and to discharge the second mortgage on the Kansas lands, and caused the Littlefields to execute such a mortgage in blank.

The agent, Houser, at the instance of Paynter, went to Kansas City for the purpose of selling this mortgage, but failed to find a purchaser therefor, whereupon Paynter inserted his own name as mortgagee. Paynter then procured the satisfaction of this second mortgage by executing his own second mortgage on the Kansas land for $2,000, and by collecting $700 advance rent on the land, and by himself advancing $1,300, making the total of $4,000, the amount named in the mortgage which the Littlefields had executed in blank and in which Paynter inserted his own name as mortgagee. By this transaction the Kansas lands, which the court found to be of the value of $16,800, were cleared of all incumbrances except the $5,000 mortgage executed by the Littlefields, and the $2,000 mortgage executed by Paynter. The court found that at that time the Arkansas lands, free of all encumbrances, were worth not to exceed $1,600.00, and, by this transaction, Paynter had secured an equity in the Kansas lands worth $7,800, and, in addition, had a mortgage on the Arkansas land for $4,000.00.

The evidence upon which these findings were made is in irreconcilable conflict. According to Paynter, and the testimony introduced in his behalf, the parties dealt with each other at arm's length and each relied upon his own investigation and judgment, and no fraudulent representations whatever were made. But, from the correspondence between the parties, and other testimony which appears in the record, the court below found that Paynter had, by dealing with Littlefield as an Odd Fellow, gained his confidence and lulled him into a sense of security, which prevented him from making the investigation which would have revealed the utter falsity of the

representations which were made in regard to the Arkansas lands. The testimony appears to fully warrant the findings of the court set out above.

It further appears that, shortly after the exchange of the properties as set out above, Paynter conveyed the Kansas lands to an innocent purchaser and thereby put it beyond the power of the law to rescind the fraudulent sale and restore the *status quo*.

The mortgage on the Arkansas lands matured, but the indebtedness there secured was not paid, whereupon this suit was brought as a proceeding to foreclose that mortgage. By answer and cross-complaint the invalidity of this mortgage was alleged, and there was a prayer for its cancellation, and for general relief against the fraudulent conduct of Paynter. In opposition to the granting of this relief, Paynter, in a reply to the cross-complaint, alleged a ratification of the sale of the land by the conduct of Littlefield subsequent to the execution of the deeds and the mortgage. The conduct of Littlefield which is said to constitute a ratification of the exchange of lands consisted in the sale, in 1916, of the pine timber on one of the quarter sections for $225.00, and the execution of an option for the timber on another quarter section for the same amount of money; and also in the fact that no request for rescission was made until the foreclosure proceedings were commenced. It was shown by the Littlefields, however, that the suit in which the Arkansas land was attached had never been settled and the *lis pendens* notice was still in force when the foreclosure proceeding was commenced on October 2, 1916. A letter to Littlefield from Paynter asserted his expectation of a favorable termination of the pending litigation by May, 1916, and in this letter he reiterated his purpose and desire "to do what I agreed to," and in the letter he repeated his statement that he had a contract for the sale of the timber at a price of $2.50 per thousand, based upon an estimate of from 2½ to 3 million feet; and in February, 1916, he deposited the mortgage with a bank in Concor-

dia, Kansas, as a pledge that he would clear the title to the land by June, 1916.

In view of the reiteration of these statements, which the court found to be false, and of the renewed promises to perform, Paynter is in no position to complain that Littlefield continued to rely upon the representations made to him. A recent and similar case is that of *Cady v. Rainwater,* 129 Ark. 498, 196 S. W. 125, where other cases on the subject are cited. There the right of rescission was awarded after a longer delay than has occurred here, and we there said that the right of rescission would not be denied one who was shown to be entitled thereto where reasonable diligence, under the circumstances of the case, had been exercised in asking that relief. We think there has been no such delay or ratification here as makes it inequitable to grant Littlefield the relief which was decreed him. This relief consisted in canceling the note and mortgage sued on and in finding the difference in value between the properties traded and in awarding judgment for that amount, less certain credits to which Paynter was shown to be entitled. Decree affirmed.